This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 140
The People &c.,
            Respondent,
        v.
Michael Sans,
            Appellant.


                Denise Fabiano, for appellant.
                Allison Ageyeva, for respondent.


FAHEY, J.:

        In the accusatory instrument charging defendant,
Michael Sans, with a misdemeanor, a police officer stated that he
had "observed the defendant remove a knife from the defendant's
pocket, . . . recovered said knife from the defendant," and
"tested the . . . knife and determined that it was a gravity

- 1 -

knife, in that it opens with centrifugal force and locks automatically in place."  Upon a guilty plea, the Criminal Court of the City of New York convicted defendant of criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [1]).  He waived prosecution by information.

On appeal, defendant contended that the accusatory instrument was jurisdictionally defective and sought its dismissal.  The Appellate Term affirmed Criminal Court's judgment, ruling that the accusatory instrument was facially sufficient (40 Misc 3d 141 [A] [App Term, 2d Dept, 9th & 10th Jud Dists 2013]).  A Judge of this Court granted defendant leave to appeal (23 NY3d 1042 [2014]).  We now affirm.

The accusatory instrument must be examined under the standard applicable to misdemeanor complaints, given defendant's waiver of the filing of an information.  Under the reasonable cause standard (see generally People v Dumas, 68 NY2d 729, 731 [1986]), the factual part of a misdemeanor complaint must allege "facts of an evidentiary character" (CPL 100.15 [3]) establishing "reasonable cause" to believe that the defendant committed the crime charged (CPL 100.40 [4] [b]).

Defendant principally contends that the accusatory instrument was insufficient under this test because it contained no allegation establishing a prima facie case that the blade of the knife, once released, was "locked in place by means of a button, spring, lever or other device" (Penal Law § 265.00 [5]),

as required by the statutory definition of a gravity knife.

The statute provides that, to be prohibited as a gravity knife, a knife must have a blade that is locked into an open position by means of a device.  This criterion " 'requires that the blade lock in place automatically upon its release and without further action by the user' " (People v Dreyden, 15 NY3d 100, 104 [2010], quoting People v Zuniga, 303 AD2d 773, 774 [2d Dept 2003], mot for lv to appeal withdrawn, 100 NY2d 567 [2003]).  It distinguishes a gravity knife from one that "requires manual locking" (Dreyden, 15 NY3d at 104).

Defendant argues that an accusatory instrument alleging possession of a gravity knife must expressly state that the knife locks by means of a device.  We disagree.  By stating that a knife, once opened, "locks automatically in place," an accusatory instrument conveys to a defendant that his knife was observed (1) to lock in an open position, rather than merely having a bias towards remaining open, and (2) to lock by means of a built-in device, rather than manually.  A mechanism that locks itself by means of such a device is naturally described as locking "automatically."  Indeed, many New York cases have treated locking "by means of a . . . device" (Penal Law § 265.00 [5]) as synonymous with "automatically" locking for these purposes (see e.g. People v Terrance, 101 AD3d 624, 625 [1st Dept 2012], lv denied, 20 NY3d 1065 [2013]; People v Neal, 79 AD3d 523, 524 [1st Dept 2010], lv denied, 16 NY3d 799 [2011]; Zuniga, 303 AD2d at

774]).  Moreover, because of the use of the generic term "device" in the statute, there can be no requirement that an arresting officer specify any particular kind of mechanism on the knife that causes it to lock in place.

Our decision in Dreyden is not to the contrary.  There, the relevant part of the accusatory instrument stated only that the arresting officer had seen Dreyden "in possession of a gravity knife . . . in that [the officer] recovered said gravity knife . . . from defendant's person" (brief and appendix for defendant-appellant in People v Dreyden, 15 NY3d 100 [2010], available at 2009 WL 6616034).  That conclusory language "failed to give any support or explanation whatsoever for the officer's belief" (Dreyden, 15 NY3d at 103), thus depriving Dreyden of due notice of the charged crime.  Unlike Dreyden, defendant Sans cannot justifiably claim that the language used in the accusatory instrument impaired his "basic rights to fair notice sufficient to enable preparation of a defense and to prevent double jeopardy" (People v Casey, 95 NY2d 354, 366 [2000]).  A reasonable defendant would have understood that the prosecution would be required to prove that his knife, once opened, locked without further manual action.  We conclude that the language used in the accusatory instrument gave defendant "sufficient notice of the charged crime to satisfy the demands of due process and double jeopardy" (Dreyden, 15 NY3d at 103).

Defendant also suggests that the accusatory instrument

insufficiently alleged that the blade of the knife was "released from the handle or sheath . . . by the force of gravity or the application of centrifugal force" (Penal Law § 265.00 [5]).  This contention lacks validity because the accusatory instrument specified that the officer tested the knife and determined that it opened "with centrifugal force."  Based upon that allegation, it can reasonably be inferred that the officer flicked the knife open with his wrist.  In any event, the officer's failure to specify the precise motion he used to open the knife did not prevent defendant from preparing his defense or avoiding double jeopardy, and therefore did not amount to a jurisdictional defect.

Finally, defendant argues that, to be jurisdictionally valid, the accusatory instrument should have alleged the officer's training or experience in the identification of gravity knives.  He cites our directive in Dreyden that "[a]n arresting officer should, at the very least, explain briefly, with reference to his training and experience, how he or she formed the belief that the object observed in defendant's possession was a gravity knife" (Dreyden, 15 NY3d at 104).  Defendant misreads this prescription.  We do not mandate that an officer recite that he or she has training and experience in identifying gravity knives or expressly state the origin of his or her skills in that area.  Rather, Dreyden requires that an arresting officer explain the basis of his or her conclusion that the defendant's knife was

a gravity knife.  The general principle applicable here is that "when an allegation involves a conclusion drawn by a police officer that involves the exercise of professional skill or experience, some explanation concerning the basis for that conclusion must be evident from the accusatory instrument" (People v Jackson, 18 NY3d 738, 746 [2012]).  Here, the accusatory instrument sufficiently pleaded that the police officer exercised his expertise by testing the knife and determining that it opened and locked in the manner proscribed by the gravity knife statute.

Accordingly, the order of the Appellate Term should be affirmed.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Judge Fahey.  Chief Judge Lippman and Judges Pigott, Rivera, Abdus-Salaam and Stein concur.

Decided October 15, 2015