People v Willis (2025 NY Slip Op 01405)

People v Willis

2025 NY Slip Op 01405 [44 NY3d 14]

March 13, 2025

Troutman, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, October 8, 2025

[*1]

The People of the State of New York, Respondent,
v
McKenzie Willis, Appellant.
The People of the State of New York, Respondent, v Edward Martinez-Fernandez, Appellant.

Argued February 12, 2025; decided March 13, 2025

PROCEDURAL SUMMARY

Appeal, in the first above-entitled action, by permission of the Chief Judge of the Court of Appeals, from an order of the Appellate Term of the Supreme Court in the First Judicial Department, entered June 26, 2023. The Appellate Term affirmed a judgment of the Criminal Court of the City of New York, New York County (Kate Paek, J.), which had convicted defendant, upon a plea of guilty, of aggravated unlicensed operation of a motor vehicle in the third degree.
Appeal, in the second above-entitled action, by permission of an Associate Judge of the Court of Appeals, from an order of the Appellate Term of the Supreme Court in the First Judicial Department, entered June 26, 2023. The Appellate Term affirmed a judgment of the Criminal Court of the City of New York, Bronx County (Mary L. Bejarano, J.), which had convicted defendant, upon a plea of guilty, of aggravated unlicensed operation of a motor vehicle in the third degree.

People v Willis, 79 Misc 3d 127(A), 2023 NY Slip Op 50631(U), affirmed.
People v Martinez-Fernandez, 79 Misc 3d 127(A), 2023 NY Slip Op 50630(U), affirmed.

HEADNOTE

Motor Vehicles
 - Aggravated Unlicensed Operation of Motor Vehicle
 - Facial Sufficiency of Misdemeanor Complaint
 - Knowledge of Suspended License

The misdemeanor complaints charging defendants with aggravated unlicensed operation of a motor vehicle in the third degree were facially sufficient, as they asserted facts of an evidentiary nature establishing reasonable cause to believe defendants knew or had "reason to know that [their] license[s] . . . [were] suspended" (Vehicle and Traffic Law § 511 [1] [a]). Both misdemeanor complaints pleaded sufficient facts to infer that the officers relied on their professional skill and experience to determine that defendants knew or had reason to know they were driving with suspended licenses inasmuch as the complaints alleged that traffic summonses have printed on them, " 'If you do not answer this ticket by mail within fifteen (15) days, your license will be suspended' " and that "[t]he suspension occurs automatically (by computer) within four (4) weeks of the defendant's failure to answer." Those averments in the misdemeanor complaints, in addition to the Department of Motor Vehicles abstracts, demonstrated the officers' nonconclusory bases for believing that defendants knew or had reason to know their licenses were suspended. No more was required because the officers established that they exercised their expertise through their averments about license suspension warnings on summonses and automatic suspensions. The truth of the allegations is an issue for trial, not a basis for dismissing a complaint for facial insufficiency.

POINTS OF COUNSEL

Twyla Carter, The Legal Aid Society, New York City (Sylvia Lara Altreuter of counsel), for appellant in the first above-entitled action. The misdemeanor complaint charging McKenzie Willis is facially insufficient because the allegations that a "computer check revealed" his driver's "license was suspended for failure to answer a New York summons, and all such summonses have printed on them," "if you do not answer this ticket by mail within fifteen (15) days your license will be suspended," and that a suspension occurs "automatically (by computer) within four weeks of the [driver]'s failure to answer," without more, do not provide reasonable cause to believe Mr. Willis knew or should have known his license was suspended. (People v Afilal, 26 NY3d 1050; People v Case, 42 NY2d 98; People v Alejandro, 70 NY2d 133; People v Slade, 37 NY3d 127; People v Casey, 95 NY2d 354.)
Alvin L. Bragg, Jr., District Attorney, New York City (Anna Notchick, Steven C. Wu and Jennifer Westphal of counsel), for respondent in the first above-entitled action. The accusatory instrument was jurisdictionally sufficient. (People v Aragon, 28 NY3d 125; People v Smalls, 26 NY3d 1064; People v Jackson, 18 NY3d 738; People v Casey, 95 NY2d 354; People v Henderson, 92 NY2d 677.)
Center on Race, Inequality and the Law, New York University School of Law, New York City (Tasleemah Tolulope Lawal, Jason D. Williamson and Vincent M. Southerland of counsel), for Center on Race, Inequality and the Law, New York University School of Law, amicus curiae in the first above-entitled action. I. McKenzie Willis' traffic stop was a pretextual stop made for an invalid reason; this stop was the likely result of racial bias. (People v Robinson, 97 NY2d 341; Delaware v Prouse, 440 US 648; People v Price, 186 AD3d 903.) II. The New York City Police Department has a pattern and practice of using pretext to surveil and stop Black and Brown New Yorkers. (Floyd v City of New York, 959 F Supp 2d 540; Terry v Ohio, 392 US 1.) III. Officials in New York State recognize the police misuse of nonsafety traffic infractions.
White & Case LLP, Houston, Texas (Morgan Hollins of counsel) and Boston, Massachusetts (Elena A. Plenefisch, admitted pro hac vice, and Jennifer Ware-Phillips, admitted pro hac vice, of counsel), for The Fines and Fees Justice Center and another, amici curiae in the first above-entitled action. I. A criminal conviction, as opposed to a traffic violation, for driving with a suspended license can have life-altering, cascading consequences that are unjust and do not serve the public interest. II. A charging complaint that is jurisdictionally deficient in a criminal proceeding violates an individual's right to due process. (People v Dreyden, 15 NY3d 100; People v Afilal, 26 NY3d 1050; People v Case, 42 NY2d 98; People v Pacer, 6 NY3d 504; Sanders v Winship, 57 NY2d 391.)
Twyla Carter, The Legal Aid Society, New York City (Sylvia Lara Altreuter of counsel), for appellant in the second above-entitled action. I. The misdemeanor complaint charging Edward Martinez-Fernandez does not provide reasonable cause to believe Mr. Martinez-Fernandez knew or should have known his license was suspended because it did not contain (A) any factual allegations he ever received a "traffic summons" that would have warned him of an impending suspension; (B) any factual basis for the officer's assertion that all such summonses included the specified written warning; or (C) any evidentiary facts to support that Mr. Martinez-Fernandez knew when a suspension would go into effect and, therefore, that he should have known he was driving with a suspended license on July 26, 2016. (People v Afilal, 26 NY3d 1050; People v Case, 42 NY2d 98; People v Alejandro, 70 NY2d 133; People v Slade, 37 NY3d 127; People v Casey, 95 NY2d 354.) II. The misdemeanor complaint charging Edward Martinez-Fernandez is also facially insufficient with respect to the reckless-driving charge because the allegations that he "ma[d]e an illegal turn" and "caused" a motorcyclist to hit his car are conclusory and because it is not necessarily illegal to cross "double yellow lines." (People v Thiam, 34 NY3d 1040; People v Grogan, 260 NY 138; People v Gaworecki, 37 NY3d 225; People v Asaro, 21 NY3d 677; People v Hill, 38 NY3d 460.)
Darcel D. Clark, District Attorney, Bronx (Elliott R. Hamilton, Yael V. Levy and Cynthia A. Carlson of counsel), for respondent in the second above-entitled action. I. The misdemeanor complaint charging aggravated unlicensed operation of a motor vehicle, upon which defendant agreed to be prosecuted, and the reasonable inferences it permitted, provided reasonable cause to believe defendant knew or should have known his driver's license was suspended. (People v Kalin, 12 NY3d 225; People v Jones, 9 NY3d 259; People v Weinberg, 34 NY2d 429; People v Casey, 95 NY2d 354; People v Dumay, 23 NY3d 518.) II. The reckless driving charge was sufficiently pleaded, which secured the Criminal Court's jurisdiction over defendant and independently authorized it to accept a plea to third-degree aggravated unlicensed driving, an equivalent-level misdemeanor. (Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801; Matter of Hearst Corp. v Clyne, 50 NY2d 707; People v Morelli, 228 AD2d 818; People v Pelchat, 62 NY2d 97; People v LaFontaine, 92 NY2d 470.)
White & Case LLP, Houston, Texas (Morgan Hollins of counsel) and Boston, Massachusetts (Elena A. Plenefisch, admitted pro hac vice, and Jennifer Ware-Phillips, admitted pro hac vice, of counsel), for The Fines and Fees Justice Center and another, amici curiae in the second above-entitled action. I. A criminal conviction, as opposed to a traffic violation, for driving with a suspended license can have life-altering, cascading consequences that are unjust and do not serve the public interest. II. A charging complaint that is jurisdictionally deficient in a criminal proceeding violates an individual's right to due process. (People v Dreyden, 15 NY3d 100; People v Afilal, 26 NY3d 1050; People v Case, 42 NY2d 98; People v Pacer, 6 NY3d 504; Sanders v Winship, 57 NY2d 391.)

[*2]

{**44 NY3d at 18} OPINION OF THE COURT

Troutman, J.

These appeals implicate the standard for determining the facial sufficiency of misdemeanor complaints. Common to both appeals are defendants' contentions that the complaints upon which they agreed to be prosecuted were facially insufficient for failing to assert evidence of a factual nature demonstrating reasonable cause to believe that defendants knew or had reason to know they were driving with suspended licenses in violation of Vehicle and Traffic Law § 511 (1) (a)—i.e., aggravated unlicensed operation of a motor vehicle in the third degree. We conclude that the Appellate Term properly affirmed defendants' convictions because the misdemeanor complaints were facially sufficient.
I.
People v Willis
A police officer spotted McKenzie Willis driving in Lower Manhattan in October 2018. The officer's search of the electronic records of the Department of Motor Vehicles (DMV) revealed that Willis's license was suspended at least three times for failing to answer traffic summonses. After stopping Willis's vehicle, the officer arrested Willis and charged him by misdemeanor complaint with one count each of aggravated unlicensed operation of a motor vehicle in the second and third degrees (Vehicle and Traffic Law § 511 [1] [a]; [2] [a] [iv]) and one count of unlicensed driving (§ 509 [1]).
People v Martinez-Fernandez
Defendant Edward Martinez-Fernandez, a taxi driver, was arrested after a traffic accident in the Bronx in July 2016. A{**44 NY3d at 19} police officer's search of Martinez-Fernandez's DMV records revealed that his license was suspended at least three times for failing to answer traffic summonses. Martinez-Fernandez was charged by misdemeanor complaint with reckless driving (Vehicle and Traffic Law § 1212); aggravated unlicensed operation of a motor vehicle in the second degree (§ 511 [2] [a] [iv]); aggravated unlicensed operation of a motor vehicle in the third degree (§ 511 [1] [a]); and unlicensed operation of a motor vehicle (§ 509 [1]).
II.
It is undisputed that defendants Willis and Martinez-Fernandez each waived prosecution by information, pleaded guilty to third-degree aggravated unlicensed driving in satisfaction of all charges, and were sentenced to a $200 fine and an $88 surcharge. In each case, the accusatory portions of the complaints alleged, among other things, that defendants were operating their motor vehicles while knowing or having reason to know that their licenses were suspended. The factual sections of each misdemeanor complaint contained averments that an officer (i) saw the defendant operating a motor vehicle; (ii) conducted a computer check of the DMV's records and determined that the defendant's license was suspended three or more times on at least three different dates for failing to answer, appear, or pay a fine pursuant to Vehicle and Traffic Law § 226 (3) or § 510 (4) (a); (iii) knew that the defendant knew or had reason to know his license was suspended because traffic summonses have printed on them, "If you do not answer this ticket by mail within fifteen (15) days, your license will be suspended"; and (iv) understood that "[t]he suspension occurs automatically (by computer) within four weeks of the defendant's failure to answer." The complaints were further supported by DMV abstracts memorializing defendants' license suspensions.
Both defendants appealed to the Appellate Term contending that the misdemeanor complaints should be dismissed as facially insufficient because they failed to provide reasonable cause to believe that defendants knew, or had reason to know, their licenses were suspended. Two unanimous panels of the Appellate Term affirmed. Both panels concluded that the misdemeanor complaints were jurisdictionally valid because they "described facts of an evidentiary nature establishing reasonable cause to believe that defendant was guilty of aggravated{**44 NY3d at 20} unlicensed driving in the third degree" (People v Willis, 79 Misc 3d 127[A], 2023 NY Slip Op 50631[U], *1 [App Term, 1st Dept 2023]; People v Martinez-Fernandez, 79 Misc 3d 127[A], 2023 NY Slip Op 50630[U], *1 [App Term, 1st Dept 2023]). Specifically, the Appellate Term found that the factual allegations in the complaints, including the DMV abstracts, "were sufficient for pleading purposes to establish reasonable cause to believe that defendant[s] knew, or had reason to know, that [their] license[s] [were] suspended" (id.).[FN1]
A Judge of this Court granted leave to appeal in each case (see People v Willis, 41 NY3d 967 [2024]; People v Martinez-Fernandez, 41 NY3d 984 [2024]).
III.
"The usual instrument filed to obtain jurisdiction over an accused for a misdemeanor offense is a misdemeanor complaint" (People v Kalin, 12 NY3d 225, 228 [2009], citing CPL 100.05, 100.10 [4]). It contains an accusatory part charging the designated offense and a factual part alleging "facts of an evidentiary character supporting or tending to support the charges" (CPL 100.15 [3]; see 100.15 [2]; Kalin, 12 NY3d at 228).
Crucially, a misdemeanor complaint "serves merely as the basis for commencement of a criminal action, permitting court arraignment and temporary control over the defendant's person where there is as yet no prima facie case" (People v Weinberg, 34 NY2d 429, 431 [1974]). However, it "may not serve as the basis for a prosecution unless the accused expressly waives the right to be prosecuted by a misdemeanor information" (Kalin, 12 NY3d at 228, citing CPL 100.10 [4]; 170.65 [1], [3]). Such a waiver allows a defendant seeking expeditious resolution of a case to consent to be prosecuted on a misdemeanor complaint—thus relieving the People of their obligation under a misdemeanor information to proffer nonhearsay allegations establishing every element of each charge (see CPL 170.65 [3]; People v Casey, 95 NY2d 354, 365 [2000]).
By waiving prosecution by information, a defendant "declines the protection of [section 100.40 (1) (c)], and the accusatory{**44 NY3d at 21} instrument must only satisfy the reasonable cause requirement" (People v Dumay, 23 NY3d 518, 522 [2014]). Under that more lenient standard, "[t]he factual part of a misdemeanor complaint must allege 'facts of an evidentiary character' (CPL 100.15 [3]) demonstrating 'reasonable cause' to believe the defendant committed the crime charged (CPL 100.40 [4] [b])" (People v Dumas, 68 NY2d 729, 731 [1986]). Reasonable cause exists when "information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that [an] offense was committed and that [a particular] person committed it" (CPL 70.10 [2]). So long as those disclosed facts or circumstances give defendants "notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading" (People v Konieczny, 2 NY3d 569, 575 [2004] [internal quotation marks omitted]; see People v Sans, 26 NY3d 13, 17 [2015]).
IV.
The misdemeanor complaints here satisfy the reasonable cause standard. The complaints "state[d] the time, date, and location of the[ ] events," and otherwise "provide[d] [defendants] enough information" of how defendants committed the crime "to put [them] on notice of the crime" and "to prevent defendant[s] from facing double jeopardy on the same charges" (Dumay, 23 NY3d at 524-526). Defendants knew from the complaints what they were accused of doing and where, when, and how they allegedly did it. Based on the complaints' allegations, defendants could assess what defenses were available to them, such as contending that they never knew their licenses were suspended, that they were never served with a summons, or that the summonses didn't warn them that their licenses would be suspended if they failed to respond.
Nevertheless, defendants contend that the complaints failed to provide reasonable cause because they did not specifically allege that defendants personally received the summonses. But reasonable inferences drawn from the sworn allegations in the complaints and defendants' certified driving records defeat that contention. As the People explain, an officer must "deliver [a traffic] summons to the alleged violator" "after the occurrence of the alleged traffic infraction" (15 NYCRR 121.5 [n]; 122.4 {**44 NY3d at 22}[a]). Here, the numerous summonses issued to each defendant are sufficient to convince a person of ordinary intelligence, judgment, and experience that it is reasonably likely defendants received at least one of them.[FN2]
Additionally, defendants' consent to prosecution by misdemeanor complaint relieved the People of their obligation under a misdemeanor information to proffer "[n]on-hearsay allegations . . . establish[ing] . . . every element of [each] charge[ ]" (CPL 100.40 [1] [c]; see 100.15 [3]; 100.40 [4] [b]; 170.65 [3]). Although that obligation—known as[*3]"the prima facie case requirement"—applies to an information, "[a] misdemeanor complaint, in comparison, need only set forth facts that establish reasonable cause to believe that the defendant committed the charged offense" (Dumay, 23 NY3d at 522).
Nor were the complaints deficient simply because they did not explain how the officers knew about suspension warnings appearing on traffic summonses or about those suspensions occurring automatically (by computer) within four weeks of a defendant's failure to answer those summonses. We do not require complaints to contain such "formulaic recitation" (Kalin, 12 NY3d at 231-232; see People v Aragon, 28 NY3d 125, 128 [2016]; Sans, 26 NY3d at 17; Konieczny, 2 NY3d at 575). Moreover, at this stage, the officers' statements about summonses "appear[ ] reliable" (CPL 70.10 [2]), inasmuch as the law tasks officers with delivering traffic summonses to alleged violators (see 15 NYCRR 122.4 [a]).
Our cases analyzing the sufficiency of misdemeanor complaints alleging criminal possession of a gravity knife are instructive. In People v Dreyden (15 NY3d 100 [2010]), a defendant challenged the sufficiency of a misdemeanor complaint merely stating that the arresting officer had seen the defendant "in possession of a gravity knife . . . in that [the officer] recovered said gravity knife . . . from defendant's person" (People v Sans, 26 NY3d 13, 16 [2015] [internal quotation marks omitted], quoting brief & appendix for defendant-appellant in Dreyden, 15 NY3d 100, available at 2009 WL 6616034, *3). We determined that conclusory language "failed to give any support or explanation whatsoever for the officer's belief," thus depriving the defendant of due notice of the{**44 NY3d at 23} charged crime and rendering the complaint jurisdictionally defective (Dreyden, 15 NY3d at 103).
In contrast, in People v Sans we rejected a defendant's contention that, to be jurisdictionally valid, the misdemeanor complaint should have alleged the arresting officer's training or experience in identifying gravity knives (see 26 NY3d at 17). We explained that the defendant misunderstood our decision in Dreyden, inasmuch as the law "do[es] not mandate that an officer recite that he or she has training and experience in identifying gravity knives or expressly state the origin of his or her skills in that area" (id.). Instead, the principle enunciated in Dreyden was that, "when an allegation involves a conclusion drawn by a police officer that involves the exercise of professional skill or experience, some explanation concerning the basis for that conclusion must be evident from the accusatory instrument" (id. [internal quotation marks omitted]). Consequently, we held in Sans that "the accusatory instrument sufficiently pleaded that the police officer exercised his expertise" by simply "testing the knife and determining that it opened and locked in the manner proscribed by the gravity knife statute" (id. at 18).
The same reasoning applies to these appeals. Both misdemeanor complaints pleaded sufficient facts to infer that the officers relied on their professional skill and experience to determine that defendants knew or had reason to know they were driving with suspended licenses inasmuch as the complaints alleged that traffic summonses have printed on them, " 'If you do not answer this ticket by mail within fifteen (15) days, your license will be suspended' " and that "[t]he suspension occurs automatically (by computer) within four (4) weeks of the defendant's failure to answer." Those averments in the misdemeanor complaints, in addition to the DMV abstracts, demonstrate the officers' nonconclusory bases for believing that defendants knew or had reason to know their licenses were suspended. Just as in Sans, no more was required because the officers established that they exercised their expertise through their averments about license suspension warnings on summonses and automatic suspensions (see id.). Those allegations, like the officer's allegations in Sans about operating the gravity knife and comparing it to the statute outlawing such knives, were sufficient evidence of a factual nature from which a person could reasonably infer defendants knew or had "reason to know that [their] license[s] . . . [were] {**44 NY3d at 24}suspended" (Vehicle and Traffic Law § 511 [1] [a]). The truth of the allegations is an issue for trial. It is not a basis for dismissing a complaint for facial insufficiency (see Dumay, 23 NY3d at 525). Thus, the Appellate Term correctly determined that the complaints in these cases are facially sufficient.
Finally, Martinez-Fernandez contends that the complaint's reckless driving charge was facially insufficient. Inasmuch as Martinez-Fernandez pleaded guilty to the facially sufficient charge of aggravated unlicensed operation of a vehicle in the third degree in satisfaction of the entire misdemeanor complaint, we need not reach his challenge to the reckless driving charge (see People v Pelchat, 62 NY2d 97, 108 [1984]), nor his claim that the traffic infraction count should be dismissed.
Accordingly, in each case, the order of the Appellate Term should be affirmed.
Chief Judge Wilson and Judges Rivera, Garcia, Singas, Cannataro and Halligan concur.
In each case: Order affirmed.

Footnotes

Footnote 1:The Appellate Term did not reach the facial sufficiency of Martinez-Fernandez's reckless driving charge given its conclusion that the complaint "was jurisdictionally valid with respect to the offense to which [Martinez-Fernandez] pleaded guilty" (Martinez-Fernandez, 2023 NY Slip Op 50630[U], *1).

Footnote 2:The misdemeanor complaint against Martinez-Fernandez provided additional cause to believe he knew or should have known his driver's license was suspended, inasmuch as it alleged that he was unable to produce a valid license.